## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| THOMAS M. THOMPSON, )<br>)<br>Movant, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | No. 3:09-0164<br>(Criminal Case No. 3:05-00140)<br>JUDGE ECHOLS |

## MEMORANDUM

Thomas M. Thompson ("Thompson") filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. (Docket Entry No. 4.) The Government filed a response opposing the motion. (Docket Entry No. 12.) Petitioner then filed a reply to the Government's response, which contains a motion for an evidentiary hearing (Docket Entry No. 18) and an Addendum To Motion To Vacate Judgment Pursuant To 28 U.S.C. § 2255. (Docket Entry No. 17.)

## I. PROCEDURAL HISTORY

The federal grand jury returned a five-count Indictment (No. 3:05-00140, Docket Entry No. 44) against seven (7) individuals alleging they participated in a conspiracy to knowingly and intentionally distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. The Indictment named Thompson as a defendant in three of the five counts: conspiracy (Count One), possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924, & 2 (Count Two), and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Four). On

1

March 3, 2006, the Government filed a sentencing enhancement notice based on Thompson's prior felony drug conviction. (Docket Entry No. 138.)

The morning that jury trial was scheduled to begin, Thompson decided to enter an open plea of guilty to Counts One, Two and Four without a plea agreement with the Government. (Docket Entry No. 166, Petition To Enter A Plea Of Guilty ¶¶ 9-10.) In the written petition to enter a plea of guilty, Thompson represented that he had received a copy of the Indictment, he had read and discussed it with his lawyer, and he believed he understood every accusation made against him. (Id. ¶ 3.) Thompson also represented that he told his appointed attorney the facts of his case, he felt the lawyer knew as much about the case as he did, his lawyer counseled him as to the nature and cause of every accusation against him, they had thoroughly discussed the Government's case against him and his potential defenses, and his lawyer had explained each element of the crimes charged and the evidence the Government would offer to prove the elements beyond a reasonable doubt. (Id. ¶ 4.) Thompson also represented that he understood the statutory mandatory minimum and maximum penalties he faced and the trial rights he would forfeit by pleading guilty, and he affirmed that no one had promised him a particular sentence. (Id. ¶¶ 5-7.)

Thompson also adopted the following paragraph in the petition to enter a plea of guilty:

> My lawyer has done all that anyone could do to counsel and assist me, and I understand the proceedings in this case against me. My lawyer has done all the investigation and research in this case that I have asked him to do and I am satisfied with his representation at this point.

(Id. ¶ 8.) Thompson stated he was voluntarily entering a plea of guilty to the three counts, and he asked the Court to accept his guilty plea. (Id. ¶¶ 9, 13.) Thompson signed the plea petition under the penalty of perjury in open court. (Id. at 4.)

2

At the guilty plea hearing, the Court placed Thompson under oath and engaged in a lengthy Rule 11 colloquy with him to be sure that he understood the trial rights he was giving up and the consequences of his intention to plead guilty. (Docket Entry No. 206, Plea Tr.) Thompson stated that he was 24 years old, he dropped out of school in the eleventh grade, and he had some employment background. (Tr. at 7-8.) He was undergoing continuing treatment for addiction to cocaine and marijuana. (Id. at 10-12.) He confirmed that he had received a copy of the Indictment and he knew he was giving up his right to a jury trial that was to start that morning. (Id. at 6, 13-14.) The Court explained the counts of the Indictment and what the Government would have to prove, and Thompson stated he had no questions about the charges or the proof. (Id. at 16-18.)

Thompson also assured the Court that he had discussed the charges with his lawyer, he told his lawyer everything about the charges, he believed his lawyer knew all the facts surrounding the charges against him, and they had discussed potential defenses. (Id. at 18-19.) Thompson answered affirmatively when asked if he was satisfied with the advice his lawyer had given him up to that point. (Id. at 19.) The Court specifically asked, "Do you have any complaints about the investigation or representation of you by your lawyer up to this point?" Thompson answered, "No, sir." (Id.) He also assured the Court that he did not have any complaints or objections about things that his lawyer did not do that he believed should have been done in representing him. (Id.)

The Court then explained the statutory mandatory minimum and maximum penalties for the three counts, and Thompson indicated he understood them and had no questions. (Id. at 19-23.) The Court also explained the Sentencing Guidelines, the presentence investigation process, good time credit, and supervised release. (Id. at 23-32, 37-38.) Again, Thompson stated he had no questions about these subjects, having discussed the guidelines with his lawyer. He was aware that any

3

sentencing calculation by his lawyer was an estimate, and having heard all of the Court's explanations, he still wanted to plead guilty. (Id. at 28, 32, 39.) The Court then explained the trial rights Thompson would give up by pleading guilty, and he indicated he understood the rights and waived them. (Id. at 40-41.)

The Court then turned to Thompson's Petition To Enter A Plea Of Guilty. Thompson acknowledged that he had carefully reviewed the document with his lawyer, he had read it himself, and he understood it. (Id. at 41.) Thompson agreed that the petition stated every understanding he had with the Government about his case, and he affirmed that no one had physically or mentally pressured him or guaranteed him what sentence he would receive, other than to calculate an estimate of the guideline range. (Id. at 44-45.) Thompson assured the Court he was not under the influence of any substance, he had a clear mind, and he knew what he was doing. (Id. at 45.) Thompson's lawyer told the Court that he believed his client was competent to plead guilty and waive his right to a jury trial, that he had discussed trial rights with Thompson, and that he believed Thompson was pleading guilty knowingly and voluntarily. (Id. at 45-46.)

The Court reviewed an agreed statement of facts to support the guilty plea, and Thompson's lawyer informed the Court that Thompson would want to be heard on some of the factual issues at sentencing. (Id. at 46-47.) Specifically, the attorney pointed out that Thompson was entering a guilty plea to a conspiracy involving five (5) kilograms or more of cocaine, but he did not stipulate to a finding of twenty (20) kilograms of cocaine; he also did not stipulate to any sentencing increase for brandishing a firearm. (Id. at 47-48.) Otherwise, counsel confirmed that Thompson agreed the Government could prove facts sufficient to support each element of the crimes charged beyond a reasonable doubt. (Id. at 48.)

4

Thompson assured the Court that he was pleading guilty because he was, in fact, guilty of the crimes charged in Counts One, Two and Four. (Id. at 49.) The Court then made its findings that Thompson was competent to enter a guilty plea, that he understood all of his rights, that the guilty plea was entered knowingly and voluntarily, and the plea was supported by an independent basis in fact. (Id. at 49-50.)

A presentence investigation report was then prepared (Docket Entry No. 235), and Thompson's lawyer filed objections to the report, as well as Thompson's Sentencing Position (Docket Entry No. 196) and a Sentencing Memorandum on behalf of Thompson (Docket Entry No. 202). The Government responded to Thompson's sentencing objections. (Docket Entry No. 204.)

After a full hearing, the Court sentenced Thompson on September 8, 2006 (Docket Entry No. 227, Sent. Tr.) to serve a total term of 480 months of imprisonment, to be followed by 10 years of supervised release. The sentence consisted of 360 months on Count One, 120 months on Count Two to run concurrently with Count One, and 120 months on Count Four, to run consecutively to the terms imposed on Counts One and Two. (Docket Entry No. 209, Judgment.)

With the assistance of his trial lawyer, Thompson appealed his sentence. The Sixth Circuit affirmed in part and reversed in part. United States v. Thompson, 515 F.3d 556 (6th Cir. 2008). The parties again filed sentencing memoranda. (Docket Entry Nos. 316, 317.) The Court re-sentenced Thompson on July 21, 2008. (Docket Entry No. 320, Judgment on Re-sentencing.) The Court imposed a total term of 420 months of imprisonment, to be followed by 10 years of supervised release. The sentence consisted of 360 months on Count One, 120 months on Count Two, to run concurrently with the term on Count One, and 60 months on Count Four, to run consecutively to the terms imposed on Counts One and Two.

5

Thompson then filed the instant § 2255 motion on February 17, 2009. He claims that his trial counsel rendered ineffective assistance by failing to: file motions, conduct an investigation which would have shown that he did not play a leadership role in the conspiracy, discuss the charges and the plea agreement with him, and interview co-defendants to see if their statements were given voluntarily. Thompson claims that he would not have entered a guilty plea if his lawyer had given him effective assistance. (Docket Entry No. 4.) The Government filed a response contending that the § 2255 motion should be denied without a hearing because the available record belies Thompson's allegations that his counsel rendered ineffective assistance. (Docket Entry No. 12.)

## II. STANDARDS OF REVIEW

To prevail on a § 2255 motion, Thompson must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993).

To establish ineffective assistance of counsel, Thompson must show that his counsel's performance was deficient and that the deficiency prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). He must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against him. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine

6

confidence in the outcome; it is a less demanding standard than "more likely than not." Id. A court need not address both parts of the Strickland test if the movant makes an insufficient showing on one. Strickland, 466 U.S. at 697.

The Strickland standard for evaluating claims of ineffective assistance of counsel at trial applies to guilty plea hearings as well. Hill v. Lockhart, 474 U.S. 52, 58 (1985). Thompson "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." See id. at 59. The Supreme Court has cautioned, however, that "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Thompson is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that he is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). An evidentiary hearing is not required if Thompson's allegations cannot be accepted as true because they are contradicted by the record, they are inherently incredible, or they are conclusions rather than statements of fact. Arredondo, 178 F.3d at 782 (citing Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995)). Finally, when the district judge also hears the collateral proceedings, as is the case here, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

7

### III. ANALYSIS

The Court concludes that an evidentiary hearing is not warranted because the Court's review of the entire record shows conclusively that Thompson is not entitled to relief. See Green, 65 F.3d at 548; Arredondo, 178 F.3d at 782. Thompson received effective assistance of counsel under Strickland and his § 2255 motion must be denied.

Thompson claims that his attorney failed to file any motions on his behalf. Yet, Thompson has not specified what motions he thinks his counsel should have filed and how such motions would have aided his defense, produced a different result, or otherwise caused him to choose a jury trial over pleading guilty. Counsel did file various scheduling motions and he joined in a motion in limine filed by other defendants concerning the provision of Giglio material and a request for a hearing under Federal Rule of Evidence 404(b). (Docket Entry No. 146.) After the plea-taking, counsel filed objections to the presentence investigation report and two sentencing memoranda. After he successfully argued on appeal that the sentence should be reversed in part, counsel filed another sentencing memorandum prior to the re-sentencing hearing. In light of the overwhelming evidence against Thompson, as outlined in the Government's response to the § 2255 motion (Docket Entry No. 12), Thompson has not made clear what motions his counsel should have filed to change the outcome of the case.

The record contradicts Thompson's claims that his attorney did not review with him the charges contained in the Indictment or the substance of the Petition To Enter A Plea Of Guilty and that his attorney coerced him to answer questions during the guilty plea hearing as the attorney directed. Under oath at the guilty plea hearing, Thompson confirmed that his attorney had discussed with him the charges, the facts of the case, the possible defenses, his decision to plead guilty, and

the potential sentence. The Court also reviewed the charges and the elements of the crimes charged. Thompson indicated he understood the charges and he did not have any questions. The Court also carefully discussed with Thompson all of the ramifications of his decision to plead guilty and he affirmed that he wanted to plead guilty because he was guilty. Thompson entered his guilty plea on the morning of trial with potential jurors waiting. Had he wished to proceed with a jury trial, he could have done so with the assistance of his counsel. Thompson assured the Court that no one had pressured him to plead guilty, that he understood his attorney's calculation of a potential sentence was simply an estimate, and that the decision to plead guilty was his alone. Thompson's entry of a guilty plea after a lengthy Rule 11 colloquy was a "'grave and solemn act'" that should not now be set aside on Thompson's whim. See United States v. Mader, 251 F.3d 1099, 1105 n.7 (6th Cir. 2001)(cited cases omitted). Thus, these claims of ineffective assistance are without merit.

Thompson also contends that his attorney did not interview the co-defendants to see if their statements to law enforcement were voluntary. The co-defendants were represented by counsel also. Thompson does not explain how he believes his attorney would have been able to gain the consent of the other defense attorneys to interview their clients other than cross-examining them if they appeared at a trial. Thompson does not even suggest that the co-defendants would have provided information exculpatory to him, but even if this is what he contends, it is speculative whether the co-defendants could have, or would have, helped Thompson, especially considering the overwhelming evidence against him.

Finally, Thompson asserts that his attorney did not conduct an investigation that would have shown he was not a leader in the conspiracy and that it was impossible for Thompson to know that his co-defendant would fire a weapon at an undercover police officer. Contrary to Thompson's view

9

that he received no assistance from his lawyer, defense counsel challenged the sentencing enhancement for leadership role in the offense. Despite counsel's efforts, the Court nonetheless held that all of the evidence pointed to Thompson as "the man in charge." (Docket Entry No. 227, Sent. Tr. at 115-116.) The Sixth Circuit affirmed this finding, observing that the leadership role enhancement can apply where more than one person qualifies as a leader or organizer of a criminal conspiracy. Thompson, 515 F.3d at 562. The appellate court ruled that, given Thompson "negotiated the details of the drug sale, had the money, and checked the cocaine for quality, the district court properly concluded that he had a leadership role." Id.

Additionally, Thompson confirmed under oath in his Petition to Enter A Plea Of Guilty that "[m]y lawyer has done all the investigation and research in this case that I have asked him to do and I am satisfied with his representation at this point." (Docket Entry No. 166 ¶ 8.) Thus, there is no merit in Thompson's claim that his lawyer should have conducted an investigation to show that Thompson could not have known his co-defendant would shoot at a police officer. In any event, Thompson's lawyer succeeded in achieving a reversal and remand on direct appeal concerning the ten-year sentence the Court imposed on Thompson for co-conspirator Kenneth Jones' firing of his weapon during the cocaine robbery. Thompson, 515 F.3d at 565-567. On remand, the Court sentenced Thompson to a five-year consecutive sentence for the § 924(c) conviction, and thus, his attorney was successful in shaving five years from Thompson's total sentence. This is not ineffective assistance.

## IV. CONCLUSION

At the guilty plea hearing, Thompson told the Court he was not under the influence of any substances that would affect his competency to understand and respond to the Court's questions.

He assured the Court that he received a copy of the Indictment, he had no questions about the charges against him, he discussed the charges and possible defenses with his counsel, and he had no questions about what the Government would have to prove. He also confirmed that he read the Petition To Enter A Plea Of Guilty, he discussed its provisions with his lawyer, he understood the document, and he had no questions about it. Although potential jurors were waiting, he stated he wanted to plead guilty and forego a jury trial. He informed the Court that he was satisfied with the investigation and advice of his counsel and he had no complaints about his attorney. Thompson has not shown deficient performance of counsel as required by Strickland.

For all of these reasons, Thomas M. Thompson's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied, and his motion for an evidentiary hearing will be denied. (Docket Entry No. 18.) Because the record shows conclusively that Thompson is not entitled to relief, an evidentiary hearing is not warranted on any issue. See Green, 65 F.3d at 548.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE